Argued and submitted October 30, reversed and remanded with instructions
November 22, 2000

Michael SWETT;
David Fidanque and the
American Civil Liberties Union of Oregon, Inc.,
*Appellants,*

*v.*

Phil KEISLING,
Secretary of State;
and the State of Oregon,
*Respondents,*

*and*

Virginia MARKELL;
Laurence Perry and Susan Remmers,
*Intervenors - Respondents.*

(98C-20484; CA A107552 (Control), CA A107799)
(Cases Consolidated)

15 P3d 50

Thomas M. Christ argued the cause and filed the briefs for appellants. With him on the briefs was the ACLU Foundation of Oregon, Inc.

David Schuman, Deputy Attorney General, argued the cause for respondents. With him on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Paul B. Gamson argued the cause for intervenors - respondents. On the brief were Margaret S. Olney and Smith, Gamson, Diamond & Olney.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Plaintiffs initiated this action for declaratory judgment to determine whether Ballot Measure 62 (1998) (Measure 62) contains two or more constitutional amendments that must be voted on separately under Article XVII, section 1, of the Oregon Constitution. Secretary of State Bill Bradbury (Secretary)[1] and intervenors argued that the measure contains no more than one amendment, and the trial court so held. Plaintiffs appeal, and we reverse and remand for entry of judgment declaring that Measure 62 violates Article XVII, section 1.

Measure 62, also known as the "Open and Fair Elections Act," appeared on the ballot at the general election of November 3, 1998. It amends the state constitution by adding to it ten new sections. Section 1 requires recipients of political contributions in excess of $500 from a single contributor in a single year to report the contributions. Section 2 requires the chief petitioners of statewide initiative measures to disclose all contributions made in support of the petition, including contributions made and expenditures received for the collection of petition signatures. It also requires any entity that works to gather such signatures to file a statement of organization with the Secretary. Section 3 requires that initiative petition signature gatherers must be registered Oregon voters. Section 4 requires that all individuals who collect initiative petition signatures obtain a license and submit to reporting requirements as specified by the Secretary. Section 5 announces a right of citizens to participate in the political process through, among other things, payment of political contributions through electronic transfer, automatic payment through a financial institution, and payroll deduction by public or private employers. Section 6 requires persons who pay for political advertisements to identify themselves in the advertisement. Section 7 requires the Secretary to disclose all contributions and expenditure reports to the public. Section 8 prohibits paying any person to sign or to refrain from signing an initiative, referendum, or

---

[1] Phil Keisling was Secretary of State when this action commenced. Bill Bradbury now holds the office. Pursuant to ORCP 34 F and ORAP 8.05(1), Bradbury was automatically substituted.

recall petition and further prohibits accepting payment for doing the same. Section 9 authorizes the Secretary to impose various penalties for violating the provisions of Measure 62. Section 10 is a severability provision.

The voters approved Measure 62 at the November 3, 1998, general election. Plaintiffs then initiated this action challenging the constitutionality of the measure. The parties filed cross-motions for summary judgment, and the trial court denied plaintiffs' motion, allowed the motion of the Secretary and intervenors, and entered judgment declaring that Measure 62 does not violate Article XVII, section 1.

■ On appeal, plaintiffs argue that, in light of the Supreme Court's decision in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998), and our subsequent decision in *Dale v. Keisling*, 167 Or App 394, 999 P2d 1229 (2000), the trial court erred in concluding that Measure 62 does not violate Article XVII, section 1. The Secretary does not debate that, at least under our decision in *Dale*, Measure 62 cannot survive constitutional scrutiny. The Secretary argues, however, that *Dale* is not controlling for two reasons. First, the Secretary argues that *Dale* lacks any precedential force, because the case later became moot. Second, and in the alternative, the Secretary argues that *Dale* was wrongly decided. Intervenors argue that *Dale* is simply irrelevant, because *additions* to the constitution—as opposed to amendments of existing provisions—do not trigger the separate-vote analysis of Article XVII, section 1.

■ We begin with intervenors' argument because, if intervenors are correct, we need not proceed to the other parties' arguments. Article XVII, section 1, provides, in part:

"When two or more amendments shall be submitted * * * to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately."

In *Armatta*, the Supreme Court examined in detail the language and history leading to the enactment of Article XVII, section 1, and, based on that examination, established the following test for determining whether a measure violates that section of the constitution:

"We conclude that the proper inquiry is to determine whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related. If the proposal would effect two or more changes that are substantive and not closely related, the proposal violates the separate-vote requirement * * *."

*Armatta*, 327 Or at 277. Thus, the test consists of three inquiries: (1) Does the measure effect two or more "changes" to the constitution? (2) Are those changes "substantive" in nature? And, (3) are those changes "closely related"? Intervenors' argument goes to the first of the three inquiries.

■    *Armatta* did not address what precisely constitutes a "change" to the constitution. The court, however, did make this much clear: The focus is not on the form of the amendment itself, but rather on the effect its enactment has on the existing constitution. As the court explained:

"Although Article XVII, section 1, does not define what is meant by 'two or more amendments,' it is important to note that the text focuses upon the potential *change* to the existing constitution, by requiring that two or more *constitutional amendments* be voted upon separately."

*Id*. at 263 (emphasis in original). Thus, whether the amendment takes the form of an addition, as opposed to a change to existing language, is not determinative.

Intervenors argue that, in any event, Measure 62 effects no changes to the constitution, because nothing in the measure conflicts with existing constitutional text. They argue that, for example, nothing in the pre-1998 constitution spoke to the question whether solicitors of initiative petition signatures must be registered voters. Therefore, they conclude, the provisions of Measure 62 that impose such a requirement "change" nothing in the existing constitution and merely "add" the requirement. In our view, intervenors view the effects of Measure 62 too narrowly.

■    The constitution generally distributes power between the people and the several branches of government. Among other things, it creates a legislature with plenary power to legislate on any matters, subject only to limitations that the state or federal constitutions themselves impose.

*State v. Moyle*, 299 Or 691, 699, 705 P2d 740 (1985) ("In principle, legislative power to select the objectives of legislation is plenary, except as it is limited by the state and federal constitutions."); *Sherwood School Dist. 88J v. Washington Cty. Ed.*, 167 Or App 372, 387, 6 P3d 518 (2000) (same). Thus, before 1998, so far as the state constitution was concerned, the legislature was free to choose whether to require that initiative petition signature gatherers be registered voters; that is to say, the legislature could have determined that such individuals need not be registered voters. Under Measure 62, the legislature no longer has the authority to make that determination. That, under any reasonable definition of the term, is a "change" in the authority of the legislature under the state constitution. Similarly, before the enactment of Measure 62, so far as the state constitution was concerned, the legislature was free to choose whether individuals who pay for political advertisements must disclose that fact; that is to say, the legislature could have determined that such individuals need not make such disclosures. Under Measure 62, however, the legislature no longer has the authority to make that determination. Again, under any reasonable definition of the term, the authority of the legislature as defined by the state constitution clearly has changed with the enactment of Measure 62.

We turn, then, to the Secretary's argument that the changes effected by Measure 62 are sufficiently "closely related" to satisfy Article XVII, section 1. In *Dale*, we examined *Armatta* in some detail and concluded that "multiple changes produced by the enactment of a measure are 'closely related' if a vote in favor of one necessarily implies a vote in favor of the others." *Dale*, 167 Or App at 401. We reasoned that only such a demanding test is faithful to the Supreme Court's conclusion that Article XVII, section 1, was intended to ensure that voters are not compelled to engage in "log-rolling," that is, voting on multiple, unrelated constitutional changes in a single vote. *Id.*

Applying that test to Measure 62 readily leads to the conclusion that the multiple changes effected by the enactment of the measure are not "closely related" within the meaning of Article XVII, section 1. Section 1, for example,

requires disclosure of certain large contributions, while section 3 requires that initiative petition signature gatherers be registered Oregon voters. A vote in favor of the former certainly does not imply a vote in favor of the latter. Similarly, section 5 guarantees a right to make political contributions through automatic deposit or payroll deduction, while section 6 prohibits anonymous campaign literature. A vote in favor of one certainly does not imply a vote in favor of the other. Indeed, the Secretary agrees that, under *Dale*, Measure 62 violates Article XVII, section 1. The Secretary's argument is that *Dale* simply has no precedential force.

The Secretary's reasoning is as follows. *Dale* involved a pre-enactment challenge to a measure before the deadline for the submission of initiative petition signatures. We issued our decision before the deadline, and so the case was still justiciable at that point. But the Secretary filed a petition for review of our opinion, and, while the petition was pending, the deadline for submission of signatures passed without the chief petitioners submitting the required signatures. At that point, the Secretary moved for a remand to the trial court for dismissal of the case as moot. The Secretary also moved that the Supreme Court vacate our opinion. The court issued an order determining that the case indeed had become moot and ordering the dismissal of the petition for review, but it denied the motion to vacate our opinion. The Secretary nevertheless argues that we are free to ignore our own opinion in *Dale*, because the case that underlies the opinion was dismissed as nonjusticiable. The fact remains, however, that the court declined to vacate our opinion. We reject without further discussion the Secretary's suggestion that *Dale* lacks precedential force.

That argument failing, the Secretary suggests that we reconsider our decision in *Dale*, because it was wrongly decided. According to the Secretary, our "narrow interpretation" of what "closely related" means is too stringent and conflicts with the Supreme Court's decision in *Armatta*. The Secretary suggests a less-demanding test: "Two or more changes to the constitution are 'closely related' if they are so logically interrelated as to present one specific, discrete, cohesive policy choice" and "accomplish a single, specific unifying purpose."

We need not pause long to reconsider our decision in *Dale*. The fact is that, even under the test that the Secretary proposes, Measure 62 does not pass constitutional muster. As we have noted, section 1 of Measure 62 requires disclosure of certain large political contributions, while section 3 requires that initiative petition signature gatherers be registered Oregon voters. We are hard-pressed to understand the "single, specific unifying purpose" that is accomplished by the enactment of those two sections. The Secretary suggests that the measure is "designed to prevent, control or expose the influence of money" in the electoral process. Yet even that explanation fails to account for the requirement that initiative petition signature gatherers be registered Oregon voters.

We conclude that the changes that are effected by Measure 62 are not sufficiently "closely related" to satisfy the requirements of Article XVII, section 1. The trial court therefore erred in denying plaintiffs' motion for summary judgment and in granting the summary judgment motions of the Secretary and intervenors.

Reversed and remanded for entry of judgment declaring that Ballot Measure 62 (1998) violates Article XVII, section 1, of the Oregon Constitution.