Argued and submitted November 6, 2001, decision of Court of Appeals affirmed and judgment of circuit court reversed April 11, 2002

Michael SWETT;
David Fidanque;
and the American Civil Liberties Union of Oregon, Inc.,
*Respondents on Review,*

*v.*

Bill BRADBURY,
Secretary of State,
and the State of Oregon,
*Petitioners on Review,*

*and*

Virginia MARKELL,
Laurence Perry, and Susan Remmers,
*Intervenors-Respondents.*

(CC 98-C-20484; CA A107552 (Control),
A107799; SC S48116)

43 P3d 1094

598

Philip Schradle, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioners on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Thomas M. Christ, of Cosgrave, Verger & Kester LLP, Portland, argued the cause and filed the brief for respondents on review.

No appearance for intervenors-respondents.

GILLETTE, J.

**GILLETTE, J.**

Plaintiffs brought this action against the State of Oregon and the Secretary of State (defendants) under the Uniform Declaratory Judgments Act, ORS 28.010 *et seq.*, challenging the constitutionality of Ballot Measure 62 (1998) (Measure 62), the "Open and Fair Elections Act." Plaintiffs asserted, *inter alia,* that Measure 62 contained two or more constitutional amendments that should have been voted on separately under Article XVII, section 1, of the Oregon Constitution, set out *post.* The circuit court disagreed, and plaintiffs appealed. The Court of Appeals reversed, concluding that Measure 62 violated the separate-vote provision of Article XVII, section 1, because it made multiple, substantive changes to the Oregon Constitution that were not closely related. *Swett v. Keisling,* 171 Or App 119, 127, 15 P3d 50 (2000). We allowed defendants' petition for review and now affirm the decision of the Court of Appeals.

The people approved Measure 62 at the November 1998 general election. It purports to add ten new sections to the Oregon Constitution. It provides, in part:

"OPEN AND FAIR ELECTIONS ACT

"The following sections are added to and made a part of the Constitution of the State of Oregon:

"Section 1.   Disclosure of Large Contributions

"In addition to any other disclosures required by law, the recipient of aggregate political contributions of $500 or more from one contributor during any one calendar year shall disclose such contribution and any subsequent contributions from that contributor to the Secretary of State or other appropriate reporting authority within seven days of receipt. * * *

"Section 2.   Disclosure of Contributions During Petition Signature Gathering

"(1)   The chief petitioner(s) on all petitions for a statewide initiative or referendum shall be responsible for disclosing to the Secretary of State all contributions received and expenditures made in support of the petition, including

expenditures made for the purpose of collecting signatures or paying signature gatherers. * * *

"(2)   Before any entity receives a contribution or makes an expenditure for the purpose of influencing the collection of signatures on a proposed statewide initiative or referendum petition, that entity shall file a statement of organization with the Secretary of State, form a petition political committee, and thereafter disclose contributions and expenditures as required in subsection (1) herein.

"Section 3.   Making Signature Gatherers Be Registered Oregon Voters, Permitting Regulation of Payment for Signatures, and Specifying Effective Date of This Constitutional Amendment

"Section 1, Article IV of the Constitution of the State of Oregon, is amended by adding a new subsection, and the Constitution of the State of Oregon is amended by creating new Sections 1b and 1c to be added to and made a part of Article IV to read:

"A person gathering signatures on an initiative or referendum petition shall be registered to vote in this state in the manner provided by law.

"Section 1b.   The Legislative Assembly may pass laws which prohibit or regulate payment for gathering signatures for initiative or referendum petitions on a per signature basis if the Legislative Assembly finds that the practice has caused fraud or other abuses.

"* * * * *"

Plaintiffs are two voters and the American Civil Liberties Union of Oregon, Inc. They filed this challenge on December 2, 1998, the day before the Secretary of State officially certified that the voters had adopted Measure 62.

In their first claim for relief, plaintiffs sought a declaration that Measure 62 was adopted in violation of two provisions of the Oregon Constitution: the separate-vote requirement of Article XVII, section 1, as noted above, and the single-subject requirement of Article IV, section 1(2)(d).[1] In

---

[1] Article IV, section 1(2)(d), provides, in part:

their second claim for relief, plaintiffs sought a declaration that section 2(2) of Measure 62, set out above, concerning disclosure by any entity of contributions made or received "for the purpose of influencing the collection of signatures on a proposed statewide initiative or referendum petition," violated the First and Fourteenth Amendments to the Constitution of the United States. Their third claim for relief concerned attorney fees. The chief petitioners for Measure 62 intervened.

The parties submitted cross-motions for summary judgment on the separate-vote issue only. The trial court, without opinion, denied plaintiffs' and granted defendants' and intervenors' motions. Plaintiffs voluntarily dismissed their remaining claims, and the trial court entered judgment in favor of defendants and intervenors. As noted, plaintiffs appealed.

■ In the Court of Appeals, the parties agreed that, to determine whether a proposed constitutional amendment violates the separate-vote requirement of Article XVII, section 1, "the proper inquiry is to determine whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related." *See Armatta v. Kitzhaber*, 327 Or 250, 277, 959 P2d 49 (1998) (stating that test). Furthermore, plaintiffs and defendants agreed that Measure 62 purported to make more than one substantive change to the Oregon Constitution.[2] They disagreed, however, about whether the changes that Measure 62 made to the constitution were "closely related." Plaintiffs argued that, under the Court of Appeals' decision in *Dale v. Keisling*, 167 Or App 394, 404, 999 P2d 1229 (2000), the changes were not "closely related" because a vote in favor of one change did not "necessarily imply" a vote in favor of the others, as the *Dale* decision required. Defendants argued

"A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

[2] Intervenors, for their part, argued that Measure 62 purported to make only one substantive change to the Oregon Constitution. They alternatively argued that, if Measure 62 did make more than one such change, the changes were closely related.

As noted below, intervenors did not petition for review of the Court of Appeals' decision. Accordingly, we do not address their arguments further.

that the Court of Appeals should reconsider its decision in *Dale*. They further argued that that court should adopt defendants' own proposed standard and conclude that the changes that Measure 62 made were "closely related" because they "were so logically interrelated as to present one specific, discrete, cohesive policy choice."

As noted above, the Court of Appeals reversed. That court explained that, under either the standard that it had articulated in *Dale* or the standard that defendants had offered, Measure 62 purported to make substantive changes to the Oregon Constitution that were not closely related. *Swett*, 171 Or App at 127. By way of example, the Court of Appeals focused on sections 1 and 3 of Measure 62 and explained:

> "[S]ection 1 of Measure 62 requires disclosure of certain large political contributions, while section 3 requires that initiative petition signature gatherers be registered Oregon voters. We are hard-pressed to understand the single, spe-cific[,] unifying purpose that is accomplished by the enact-ment of those two sections. The Secretary suggests that the measure is designed to prevent, control or expose the influ-ence of money in the electoral process. Yet even that expla-nation fails to account for the requirement that initiative petition signature gatherers be registered Oregon voters."

*Id.* (internal quotations omitted). Defendants, but not inter-venors, petitioned for review.

■ On review, defendants for the first time raise an issue of subject matter jurisdiction. They argue that the trial court did not have jurisdiction to hear this challenge under ORS 28.010 because ORS 250.044[3] provides the exclusive means of bringing a ballot-measure challenge after the voters adopt a measure. They further argue that the trial court did not have jurisdiction under ORS 250.044, because any chal-lenge under that statute may not be brought until *after* the Secretary of State formally certifies the results of an election and, in this case, plaintiffs brought their challenge on the day *before* the Secretary of State formally certified that Measure 62 had passed.[4] As to the merits, defendants renew the argu-ments that they made in the Court of Appeals.

---

[3] The text of ORS 250.044 is set out *post*, 333 Or at 603-04.

[4] Despite those alleged jurisdictional defects, defendants do not ask this court to dismiss the case for want of jurisdiction; they ask instead that this court deem

■        We begin our discussion of the issues in this case by addressing defendants' argument concerning subject matter jurisdiction. As noted, the trial court assumed jurisdiction under ORS 28.010, which provides, in part:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. * * *"

Although a trial court has broad power to provide declaratory relief, it lacks subject matter jurisdiction under ORS 28.010 if some other *exclusive* remedy exists. *Alto v. State Fire Marshal*, 319 Or 382, 395, 876 P2d 774 (1994). In this case, defendants argue that the trial court lacked jurisdiction under ORS 28.010 because the legislature intended ORS 250.044 to be the exclusive means for challenging a ballot measure after an election. To determine if defendants are correct in that regard, we examine the text and context of ORS 250.044. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (to determine legislative intent, first step is to examine text of statute, read in context).

ORS 250.044 provides, in part:

"(1)   An action that challenges the constitutionality of a measure initiated by the people or referred to the people for a vote must be commenced in the Circuit Court for Marion County if:

"(a)   The action is filed by a plaintiff asserting a claim for relief that challenges the constitutionality of a state statute or an amendment to the Oregon Constitution initiated by the people or referred to the people under section 1 (1) to (4), Article IV of the Oregon Constitution;

"(b)   The action is commenced on or after the date that the Secretary of State certifies that the challenged measure has been adopted by the electors and within 180 days after the effective date of the measure; and

the matter properly filed under ORS 250.044 so that, in the name of efficiency and the interests of justice, this court may proceed to resolve the important issues of law presented by this case. Because we hold that there is jurisdiction under ORS 28.010, 333 Or at 605, we need not address defendants' suggestion further.

"(c) The action may not be commenced in the Oregon Tax Court.

"\* \* \* \*"

The use of the verb "must" and the conjunction "if" in the first sentence of ORS 250.044(1) indicates that the legislature intended the statute to apply to all ballot-measure challenges that fit a particular description. The precise question, therefore, is not whether the legislature intended ORS 250.044(1) to be the exclusive method of bringing *certain* ballot-measure challenges. By its terms, it did. The question, instead, is whether ORS 250.044(1) applies to *all* ballot-measure challenges, including those filed after the election but before the Secretary of State certifies the result of that election. As discussed below, we conclude that it does not.

As noted, ORS 250.044(1) provides that a ballot-measure challenge "must be commenced in the Circuit Court for Marion County *if*: \* \* \*." (Emphasis added.) Three paragraphs, identified as (a), (b), and (c), then follow. Those three paragraphs are joined by the conjunction "and" between paragraphs (b) and (c). The plain wording and punctuation of the statute therefore convey that the mandate of ORS 250.044(1)—the requirement of filing a ballot measure challenge in Marion County Circuit Court—applies to ballot-measure challenges that fit the description set out in paragraphs (a) through (c).

■ Consistent with that structure of the statute, paragraph (a) describes the substantive nature of the type of ballot-measure challenge to which ORS 250.044(1) applies, *viz.*, challenges to ballot measures upon constitutional grounds. The part of the statute that is crucial to the jurisdictional issue before us, however, is paragraph (b), which sets out the second in the list of three requirements that follow the "if" clause of ORS 250.044(1):

"[T]he action is commenced on or after the date that the Secretary of State certifies that the challenged measure has been adopted \* \* \* and within 180 days after the effective date of the measure."

Taken together, paragraphs (a) and (b) collectively have only one plausible reading: Ballot measure challenges, brought on

constitutional grounds and during the period commencing when the Secretary of State certifies that the measure has been adopted and ending 180 days after the measure's effective date, must be commenced in the Circuit Court for Marion County (but not in the Oregon Tax Court). So read, the statute is a completed, albeit limited, thought. It does not address actions that might be commenced on other grounds, during any other period of time, in either the Circuit Court for Marion County or elsewhere.

Despite the location of paragraph (b) in the text of ORS 250.044(1), defendants contend that it is not simply one requirement in a list of three respecting when and where a certain class of ballot-measure challenges must be filed. Defendants argue that the legislature intended paragraph (b) to *prohibit* the filing of any ballot-measure challenge other than the kind described in ORS 250.044(1)(a), either before the Secretary of State certifies that the measure was adopted or after 180 days have passed following the effective date of the measure. In support of that argument, however, defendants argue only that any other interpretation of ORS 250.044(1)(b) would so narrow the application of ORS 250.044(1) that the statute would serve no useful purpose.

We disagree. There are reasons that the legislature would create a statute that addresses those ballot-measure challenges that are filed within 180 days of the effective date of the measure, such as a desire to have all such proceedings conducted in a single forum and to have that forum be the circuit court in the county in which the two state officials who would be most involved in such cases (the Secretary of State and the Attorney General) have their principal offices. In any event, we cannot disregard the plain, unambiguous wording of ORS 250.044(1). *See PGE*, 317 Or at 611 (if legislative intent clear at first level of analysis, inquiry ends). We hold that ORS 250.044 does not provide the exclusive means of challenging a ballot measure after an election, and it does not apply to a ballot-measure challenge, like the one before us, brought *before* the Secretary of State certifies that a measure had been adopted by the people. It follows that jurisdiction is proper under ORS 28.010. We turn to the merits.

Article XVII, section 1, provides, in part:

"When two or more amendments shall be submitted * * * to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately."

Plaintiffs and defendants disagree not only about whether Measure 62 violates that separate-vote requirement, but also about the appropriate "test" that a court should use to analyze whether any ballot measure violates that requirement. However, our recent decision in *Lehman v. Bradbury*, 333 Or 231, 241-42, 37 P3d 989 (2002), a decision that was not available to the parties or to the Court of Appeals at the time they considered this case, resolves the issue concerning the appropriate test.[5]

■      In *Lehman*, we considered the "necessary-implication" test that the Court of Appeals announced in *Dale*, as well as defendants' proposed "cohesive policy choice" test for whether a ballot measure offends the separate-vote requirement. We rejected both. *Lehman*, 333 Or at 242. We instead adhered to the test announced in *Armatta*, holding that, when a proposed constitutional amendment is challenged on the ground that it violates the separate-vote requirement of Article XVII, section 1, the " 'proper inquiry is to determine whether, if adopted, *the proposal would make two or more changes to the constitution that are substantive and that are not closely related.*' " *Id.* at 239 (emphasis in original), *quoting Armatta*, 327 Or at 277. We turn to that inquiry now.

■      Ordinarily, we begin any separate-vote inquiry by identifying the changes, both explicit and implicit, that the ballot measure purports to make to the Oregon Constitution. *Lehman*, 333 Or at 242-43. We then determine if those changes are substantive. *Id.* at 244. If they are, we then determine if those substantive changes are "closely related." *Id.* In *Lehman*, we described that analytical process this way:

---

[5] In *Lehman*, this court held that Ballot Measure 3 (1992), the "Term Limits Initiative," contained two or more amendments to the Oregon Constitution that should have been voted on separately. That case came to this court by means of the direct appeal provision of Oregon Laws 2001, chapter 145, section 3(5), and was argued on the same day as the case presently before us.

"* * * First, we examine the relationship among the constitutional provisions that the measure affects * * *. If the affected provisions of the existing constitution themselves are not related, then it is likely that changes to those provisions will offend the separate-vote requirement. * * * [T]he fact that a proposed amendment asks the people, in one vote, substantively to change multiple provisions of the Oregon Constitution that are not themselves related is one indication that the proposed amendment might violate the separate-vote requirement.

"Next, we must consider the constitutional changes themselves. That is, * * * we must determine whether the changes made to those * * * constitutional provisions are closely related. If they are closely related, the measure under consideration survives scrutiny under Article XVII, section 1. If they are not, it does not."

*Id.* at 246 (footnote omitted).

■       The foregoing statement from *Lehman* was descriptive, not prescriptive. That is, it is equally valid analytically to start the inquiry by focusing on the changes themselves. This case illustrates the point. We need not discuss each of the steps described above, because the parties' arguments narrow the focus of our inquiry. First, the parties agree that Measure 62 makes more than one change to the Oregon Constitution and that the changes are substantive. Among those, they agree, are the two that were the focus of the Court of Appeals' opinion, *viz.*, the requirement in section 1 of Measure 62 that "the recipient of aggregate political contributions of $500 or more from one contributor during any one calendar year * * * disclose such contribution[s]" and the requirement in section 3 of Measure 62 that "[a] person gathering signatures on an initiative or referendum petition * * * be registered to vote in this state * * *." Because we conclude, below, that those two changes are not closely related, the other substantive changes that Measure 62 purports to make to the Oregon Constitution, if any, have no bearing on this decision.

Respecting the changes that we have singled out for discussion here, the parties also agree that they affect more than one provision of the Oregon Constitution. At a minimum, section 1 of Measure 62 implicitly changes Article II,

concerning suffrage and elections.[6] That article contains various eligibility requirements for publicly elected officials. *See e.g.*, *Lehman*, 333 Or at 247 (discussing provisions of Article II respecting circumstances that disqualify person from holding elective office). Section 1 of Measure 62 imposes an additional requirement on those publicly elected officials if they receive political contributions in excess of $500 from any one contributor: The officials must disclose the amount and source of the contribution. Meanwhile, section 3 of Measure 62 affects Article IV, section 1(2), concerning the legislative power: It explicitly amends that constitutional provision to require that persons who gather signatures for initiative and referendum petitions be registered voters.

Having described the common ground between the parties, we turn to a consideration of the relationship between the changes that Measure 62 makes to the Oregon Constitution. As noted, because our decision turns on the lack of close relationship between the changes that Measure 62 makes to the constitution, regardless of the relationship between the affected constitutional provisions, we discuss the changes themselves.

As they did in the Court of Appeals, defendants contend that the constitutional changes that Measure 62 makes in sections 1 and 3 of that measure are closely related because, like other changes proposed by Measure 62, "they are regulations designed to prevent, control, or expose the influence of money in the initiative [and] referendum * * * process." However, defendants again fail to explain how the voter-registration requirement of section 3 bears any relationship to that suggested design. At oral argument, defendants stated that the voter-registration requirement would prevent out-of-state signature gatherers from participating in the initiative process and that that, in turn, would inhibit out-of-state financial influence on Oregon elections, but we

---

[6] Plaintiffs argue that section 1 of Measure 62 also implicitly changes Article I, section 8, because the contribution-disclosure requirement addressed in section 1 is a burden on a form of political speech. Defendants disagree. Because the changes about which the parties agree are sufficient to support our holding, that Measure 62 makes two or more changes to the constitution that are not closely related, we do not reach plaintiffs' argument concerning Measure 62's impact, if any, on rights guaranteed under Article I, section 8.

find that argument too attenuated to be persuasive. Even if a residency requirement were related to the purpose of Measure 62 as described by defendants, voter registration is not synonymous with residency. Section 3 precludes Oregonians who are not registered to vote from gathering signatures, just as it precludes those who live in other states from doing so. Put differently, the scope of the measure exceeds even defendants' proffered rationale for it.

■    More importantly, however, defendants' argument fails because it is an attempt to show that sections 1 and 3 of Measure 62 share the same *subject matter*. That may or may not be true, but it is beside the point in an analysis under Article XVII, section 1. Defendants do not focus, as they must in a separate-vote challenge, on *the particular changes made to the constitution. See Lehman* at 241-42 (separate-vote requirement, in contrast to single-subject requirement, focuses on extent to which proposed amendment modifies existing constitution). Section 1 of Measure 62, by imposing a disclosure requirement on those who receive political contributions, adds an additional rule to those already set out in Article II concerning how a publicly elected official must act. By contrast, section 3 of Measure 62, by creating an eligibility requirement for those who undertake the task of gathering signatures for initiative and referendum petitions, limits the legislative power of the people as described in Article IV, section 1(2). Those two constitutional changes, as far as we can tell either from our own analysis or on the basis of defendants' arguments, are not closely related to each other. As did the Court of Appeals, we conclude that the contribution-disclosure requirement in Measure 62, section 1, and the voter-registration for signature-gatherers requirement in Measure 62, section 3, constitute at least two proposed amendments to the Oregon Constitution, and could not be submitted to the voters in a single measure. Because that is what occurred respecting Measure 62, we hold that the measure offends the separate-vote requirement of Article XVII, section 1, of the Oregon Constitution. The measure was not properly adopted by the people and is invalid.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed.