Argued and submitted November 29, 2005, reversed and remanded with
instructions to enter judgment for plaintiffs April 26, both petitions for review
allowed August 8, 2006 (341 Or 216)
See later issue Oregon Reports

Andrea R. MEYER
and David Fidanque,
*Appellants,*

*v.*

Bill BRADBURY,
Secretary of State
for the State of Oregon,
*Respondent,*

*and*

David E. DELK,
*Respondent.*

04C-20669; A127935

134 P3d 1005

Charles F. Hinkle argued the cause for appellants. With him on the briefs were Scott J. Kaplan and ACLU Foundation of Oregon, Inc.

Charles E. Fletcher, Assistant Attorney General, argued the cause for respondent Bill Bradbury. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Daniel W. Meek argued the cause and filed the briefs for respondent David Delk.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

**ROSENBLUM, J.**

Plaintiffs brought this action seeking to enjoin defendant Secretary of State from placing a proposed initiative, Initiative Petition (IP) 8, on the November 2006 ballot on the ground that it violates the separate-vote requirement found in Article XVII, section 1, of the Oregon Constitution. The trial court concluded that IP 8 did not propose more than one substantive change to the constitution, denied plaintiffs' motion for summary judgment, and granted defendants' motion.[1] Plaintiffs appeal, assigning error to those rulings. In response, defendants raise several arguments as to why the trial court's judgment should be affirmed on appeal. Among those are that plaintiffs lack standing to bring this action, that they have failed to exhaust their administrative remedies, that IP 8 does not propose more than one substantive change to the constitution, and that, even if it did, those changes are closely related and therefore do not run afoul of the separate-vote requirement. In addition to the issues raised by the parties, we address the preliminary matter of justiciability in light of the pre-election nature of this challenge. We conclude that it is justiciable. We also reject defendants' standing and exhaustion arguments and conclude that IP 8 violates the separate-vote requirement. We therefore reverse.

To place the procedural posture of this case in context, we begin with a brief overview of the initiative process. Article IV, section 1(2)(a), of the Oregon Constitution provides, "The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly." The first step in the initiative process is for the petitioner to file a prospective petition with the Secretary of State. ORS 250.045. The prospective petition must include a copy of the measure to be initiated and a statement of sponsorship signed by at least 25 electors. *Id.* If the Secretary of State approves the prospective petition, the secretary must send copies of the prospective petition to the Attorney General to draft a ballot title. After a ballot title has

---

[1] The second defendant is David Delk, the chief petitioner of IP 8, who intervened in this action.

issued, the petition may be circulated to gather the requisite number of signatures.[2] Then, the Secretary of State must verify the signatures and certify the petition for the ballot. ORS 250.105.

The initiative petition in this case, IP 8, involves campaign financing. It provides:

> "Be it enacted by the People of the State of Oregon, there is added an Article II, section 24, of the Constitution of Oregon, as follows:

> "Notwithstanding any other provisions of this Constitution, the people through the initiative process, or the Legislative Assembly by a three-fourths vote of both Houses, may enact and amend laws to prohibit or limit contributions and expenditures, of any type or description, to influence the outcome of any election."

Defendant Delk, the chief petitioner for IP 8, gathered the requisite 25 elector signatures and submitted IP 8 to defendant Secretary of State for review. Defendant Secretary of State accepted comments on IP 8, including one from plaintiffs, who objected to IP 8 on the ground that it violates the separate-vote requirement of Article XVII, section 1. Defendant Secretary of State disagreed and engaged the Attorney General to draft a ballot title for IP 8. Defendant Secretary of State received no objections to the form of the ballot title and subsequently approved IP 8 for circulation.

Plaintiffs then brought this action seeking declaratory and injunctive relief against defendant Secretary of State, again arguing that he should not have approved IP 8 for circulation, on the ground that it violates the separate-vote requirement. Defendant Delk intervened in the action and raised several affirmative defenses, including lack of

---

[2] Article IV, section 1(2)(c), provides that

"[a]n initiative amendment to the Constitution may be proposed only by a petition signed by a number of qualified voters equal to eight percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition."

According to a December 5, 2002, news release by the Secretary of State, the requisite number of signatures for an initiative amendment following the 2002 gubernatorial election is 100,840.

standing and failure to exhaust administrative remedies. Defendant Delk also joined defendant Secretary of State in asserting that IP 8 does not violate the separate-vote requirement of Article XVII, section 1. All parties agreed that there were no disputed issues of fact, and each moved for summary judgment. The trial court denied plaintiffs' motion, granted defendants', and entered judgment accordingly.

The parties renew their arguments on appeal. Before we address those arguments, however, we consider the preliminary issue of whether this case is justiciable. *See Oregon Medical Association v. Rawls*, 281 Or 293, 296, 574 P2d 1103 (1978) (noting that appellate courts must consider justiciability regardless of when or whether it was raised to them or to any other court). After the initial briefing and oral arguments, this court asked the parties to submit supplemental briefing addressing whether a party may bring a pre-election challenge based on the separate-vote requirement of Article XVII, section 1, of the Oregon Constitution. Specifically, we asked the parties to address *State ex rel. v. Newbry et al.*, 189 Or 691, 222 P2d 737 (1950)—in which the Supreme Court held that a court could not entertain a pre-election challenge to an initiative based on the separate-vote requirement—and the Supreme Court's treatment of that case in its later opinions. Plaintiffs respond that, although *Newbry* involved a challenge identical to the one at issue here, it no longer controls, having been overruled by *Foster v. Clark*, 309 Or 464, 790 P2d 1 (1990). Defendant Secretary of State agrees that, although *Foster* did not explicitly overrule *Newbry*, it did so implicitly. We agree with the parties that *Newbry* is no longer controlling.

In *Foster*, the court addressed whether a person could challenge a measure, before the election, on the ground that it was not "municipal legislation" and therefore not a proper subject for an initiative measure under Article IV, section 1(5), of the Oregon Constitution.[3] 309 Or at 466. The

_____

[3] Article IV, section 1(5), of the Oregon Constitution provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide

court noted that there were two lines of cases discussing whether a particular challenge to a measure may be brought before an election and that they "appear to run in different directions." *Id.* at 470. The court identified *Newbry* as falling into the first line of cases, which the intervenor had "read too much into." *Id.* at 469. Although the court also stated that the *Newbry* line of cases could continue to be read for the proposition that "a court will not inquire into the substantive validity of a measure—*i.e.* into the constitutionality, legality, or effect of the measure's language—unless or until the measure is passed," it indicated that, in general, that line of cases was not clearly reasoned and ran contrary to the line of cases stating the "correct rule." Accordingly, the court would no longer adhere to the *Newbry* line of cases. Instead, it would adhere to the more recent line of cases "as being more clearly reasoned and stating the correct rule." *Id.* at 471.

The court then applied the "correct rule" in the context of municipal legislation and held that a challenge on that basis could be brought before the election "because that qualifying language is used in the constitution itself." *Id.* In other words, the challenge could be brought before the election because it was based on language in the constitution that qualifies or limits the initiative power.

Our discussion in *Beal v. City of Gresham*, 166 Or App 528, 998 P2d 237 (2000), reinforces the conclusion that *Newbry* is no longer controlling. In *Beal*, we noted that, before the Supreme Court's decision in *OEA v. Roberts*, 301 Or 228, 721 P2d 833 (1986), the general rule was that no challenge to a measure could be brought before the election. *Beal*, 166 Or App at 533. We cited *Newbry* for that general rule. *Id.* We then noted that *Foster* had formulated a new rule that courts " 'will prevent a measure from being placed on the ballot if the measure is legally insufficient to qualify for that ballot.' " *Id.* at 534 (quoting *Foster*, 309 Or at 534).

■    Applying that rule here, we conclude that a challenge to a proposed measure on the ground that it violates the

---

the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

separate-vote requirement may be brought before the election. Article XVII, section 1, provides, in part, "When two or more amendments shall be submitted in the manner aforesaid to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately." In our view, that language speaks to the "legal sufficiency" of a proposed initiative. Although "legal sufficiency" has not been clearly defined in the post-*Foster* cases, *Foster* does instruct that it reaches further than an insufficient number of signatures. Without other guidance, we conclude that the challenge here—brought under the separate-vote requirement and based on language in the constitution that contains a qualification for placing a measure on the ballot—is a matter of legal sufficiency. As such, it constitutes an appropriate pre-election challenge. *Cf. Armatta v. Kitzhaber*, 327 Or 250, 259, 959 P2d 49 (1998) (noting that "submission of such [initiative and referendum] measures shall be guided both by Article IV, section 1, *and* other applicable laws, presumably including Article XVII, section 1" (emphasis in original)).

■     We turn to the next issue related to justiciability, namely, defendant Delk's argument that plaintiffs lack standing to bring this action. Defendant Delk contends that plaintiffs were required to "show some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002). We disagree. As the court explained in *League of Oregon Cities*, such a showing is required in an action under ORS 28.020, which requires that a person's "rights, status, or other legal relations" be affected "by a constitution, statute, [or] municipal charter." The court, however, contrasted that showing with the one required under ORS 246.910(1). 334 Or at 654-55 n 9. Because plaintiffs in this case brought their action under ORS 246.910(1),[4] they were required only to make the lesser showing described by that statute, which provides:

---

[4] We reject defendant Delk's contention that plaintiffs abandoned that statute as the basis for their action by failing to include a citation to the statute in their opening brief on appeal.

"A person adversely affected by any act or failure to act by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law, or by any order, rule, directive or instruction made by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law, may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive or instruction was made."

That statute requires only that a person be "adversely affected" before bringing an action challenging an election ruling of the Secretary of State. The Supreme Court has held that, "[i]n effect, this means that any registered voter—and probably others, as well—can file an action." *Ellis v. Roberts*, 302 Or 6, 11, 725 P2d 886 (1986); *see also Lowe v. Keisling*, 130 Or App 1, 14, 882 P2d 91 (1994), *rev dismissed*, 320 Or 570 (1995) (ORS 246.910(1) requires only an allegation that the plaintiff is a registered voter). Plaintiffs alleged in their complaint that they are electors. An "elector" is "an individual qualified to vote under section 2, Article II, Oregon Constitution." ORS 247.002(2). In other words, an elector is a properly registered voter. We therefore conclude that plaintiffs have standing under ORS 246.910(1).

We turn next to the exhaustion issue. Defendant Delk contends that plaintiffs failed to exhaust their administrative remedies because, although plaintiffs submitted comments to defendant Secretary of State contending that IP 8 would violate the separate-vote requirement, they did not preserve the precise argument that IP 8 proposes to change Article IV, section 25(1). *See Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977) ("The requirement that a party must have objected before the agency to errors he asserts on judicial review is one facet of the general doctrine that a party must exhaust his administrative remedies."). Plaintiffs respond that they were not required to exhaust administrative remedies and, even if they were, they did so. We need not address the first point, because we agree with the second.

Plaintiffs submitted a comment letter to defendant Secretary of State in which they expressly contended that

IP 8 "would make multiple amendments to the existing constitution that are not closely related." We quote at length from the letter to demonstrate how closely it tracks the argument that plaintiffs made to the trial court and to this court.

"First, IP #8 amends Article I, section 8 of the Oregon Constitution and this appears to be its primary purpose; i.e., to weaken Article I, section 8—the Oregon guarantee of free expression—in order to make an exception allowing for enactment of restrictions on campaign contributions and expenditures.

"Second, IP #8 would have the effect of amending Article IV, section 1 by establishing new hurdles for the Legislature to amend or enact laws related to campaign finance. Under this provision of IP 8, the people, through the initiative process, would be able to adopt or amend laws by a bare majority of those voting on the proposed initiative. However, the Legislature's power would be diminished because it would be required to muster a three-fourths majority in both houses in order to amend or enact laws related to campaign finance.

"This marks a dramatic shift in the balance of legislative power which is now equally shared by the Legislature and the People (through the initiative and referendum).

"The question of diminishing the legislative power of representatives and senators, who were elected by district and are directly accountable to the voters in each of those 90 separate districts, is completely different and distinct from the change that IP #8 would make to the freedom of expression guarantee in Article I, section 8.

"The Oregon Constitution requires that these distinct and unrelated issues be submitted separately to the voters."

In that letter, plaintiffs raised the issue that IP 8 violated the separate-vote requirement of Article XVII, section 1. They also made the argument that IP 8 violated that section because it proposed at least two changes to the constitution that are not closely related. Although, as part of that argument, plaintiffs asserted that IP 8 proposed to change Article I, section 8, and Article IV, section 1—as opposed to Article IV, section 25(1), as they asserted to the trial court and this court—the thrust of plaintiffs' argument has

remained constant: IP 8 would alter the legislative power by requiring a three-fourths majority to enact and amend legislation relating to campaign finance, and that change is not closely related to the proposed change to remove campaign finance legislation from the protections of Article I, section 8. In sum, plaintiffs raised the issue that they now advance before defendant Secretary of State, consistently relied on Article XVII, section 1, as the source for their position, and made nearly identical arguments to defendant Secretary of State and the courts. It follows that, assuming they were required to do so, plaintiffs exhausted their administrative remedies.

■　　　Finally, we turn to the merits. To determine whether IP 8 violates the separate-vote requirement, we inquire "whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related." *Armatta*, 327 Or at 277. We begin that inquiry by identifying the changes, both explicit and implicit, that the ballot measure purports to make to the Oregon Constitution. *Swett v. Bradbury*, 333 Or 597, 606, 43 P3d 1094 (2002). We then determine if those changes are substantive. *Id.* If they are, we examine whether those substantive changes are "closely related." *Id.*

■　　　Plaintiffs argue that IP 8 proposes to make at least two changes to the constitution. First, it would change Article I, section 8, by removing campaign contributions from the class of expression protected by that section. Second, it would change Article IV, section 25(1), by carving out an exception to the rule found in that section that the legislature may pass and amend legislation by a simple majority. Defendants agree that IP 8 would change Article I, section 8. They argue, however, that it would not change Article IV, section 25(1), because that section applies only to that class of laws that the legislature had the power to enact at the time that section was drafted. They argue that IP 8 grants the legislature a new power to which the old rules do not apply.

■　　　We disagree. Article IV, section 25(1) provides, in part, that "a majority of all the members elected to each House shall be necessary to pass every bill or Joint resolution." We first note that the text of that section expressly

states that it applies to *"every* bill or Joint resolution." (Emphasis added.) There is no restriction to particular types of bills and resolutions that the legislature had the power to pass at the time the section was adopted. Defendant Delk points to nothing in the case law interpreting that section or the historical circumstances surrounding its enactment that would restrict a broad interpretation. *See Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (in interpreting the meaning of constitutional provisions, we examine the text of the provision, the case law surrounding it, and the historical circumstances that led to its creation). We therefore conclude that the section applies to every bill or joint resolution, even those involving new areas of lawmaking.

■        Defendants also argue that IP 8 does not propose to change Article IV, section 25(1), because that section provides merely that a majority of all the members elected to each House shall be *necessary* to pass legislation and, under IP 8, a majority vote would still be necessary to pass every bill. The trial court agreed with that theory. We reject that view and conclude that a rule that a three-fourths majority is necessary to pass legislation constitutes a change from a rule that a simple majority is necessary to pass legislation. We therefore conclude that IP 8 proposes at least two changes to the Oregon Constitution.

        We also conclude that those changes are substantive. Neither change is merely formal, such as a change to numbering, modernization of spelling, and the like. Moreover, the changes are real, rather than merely possible or speculative in nature. *See Dale v. Keisling*, 167 Or App 394, 400, 999 P2d 1229 (2000), *abrogated on other grounds by Lehman v. Bradbury*, 333 Or 231, 37 P3d 989 (2002) (speculating about what types of changes would not be "substantive"). We turn to whether the changes proposed by IP 8 are closely related.

        We engage in a two-step process to determine whether two substantive changes are closely related to each other. *Lehman*, 333 Or at 246. First, we examine the relationship among the constitutional provisions affected. "If the affected provisions of the existing constitution themselves

are not related, then it is likely that changes to those provisions will offend the separate-vote requirement." *Id.* Second, we examine the constitutional changes themselves to determine whether they are "closely related" to each other.[5]

Applying the two-step process, we first note that the relevant provisions of the existing constitution—Article I, section 8, and Article IV, section 25—are not closely related to each other. Article I, section 8, involves free speech and Article IV, section 25(1), involves legislative power. It is therefore likely that IP 8 will offend the separate-vote requirement.

Turning to the second step, we conclude that the changes themselves are not so closely related as to rescue the proposed measure. The first proposed change is straightforward. It would create an exception to Article I, section 8, for "laws to prohibit or limit contributions and expenditures, of any type or description, to influence the outcome of any election." Under IP 8, both the people, through the initiative process, and the legislature may enact such laws.

The proposed change to Article IV, section 25, is more complicated in that it would impact legislative power in several distinct ways. IP 8 provides that "the Legislative Assembly by a three-fourths vote of both Houses, may enact and amend laws to prohibit or limit contributions and expenditures, of any type or description, to influence the outcome of any election." Thus, under IP 8, the legislature would be prohibited from passing such laws, except by a three-fourths majority. It would also be prohibited from amending any such legislation that it passed, except by a three-fourths majority. Finally, it would be prohibited from amending any such legislation that was adopted by the people through the initiative process, except by a three-fourths majority. As an

---

[5] The Supreme Court has offered little guidance about what it means for provisions to be "closely related." In *Lincoln Interagency Narcotics Team v. Kitzhaber*, 188 Or App 526, 72 P3d 967 (2003), *rev allowed*, 336 Or 376 (2004) (*LINT*), this court reviewed all of the Supreme Court cases applying the "closely related" analysis. A repetition of that review would not aid our analysis here. We note only that, since *Armatta*, the Supreme Court has provided only one example of provisions that are "closely related." *See Hartung v. Bradbury*, 332 Or 570, 33 P3d 972 (2001). In *LINT*, this court was unable to reconcile that example with other Supreme Court precedents.

example, under IP 8, the people could adopt legislation (by a simple majority under the initiative process) prohibiting campaign contributions, and the legislature would be powerless to amend that legislation, except by a three-fourths majority.

■       We cannot say that the proposed change to Article IV, section 25—which would have the profound effect of shifting the balance of power from the legislature to the people, through the initiative process, in matters related to campaign finance—is closely related to the change carving out an exception to Article I, section 8, for laws that prohibit or limit contributions and expenditures to influence the outcome of an election. We therefore conclude that IP 8 violates the separate-vote requirement in Article XVII, section 1. Accordingly, the trial court erred by denying plaintiffs' motion for summary judgment.

Reversed and remanded with instructions to enter judgment for plaintiffs.