Argued and submitted October 19, 2007, affirmed May 21, 2008

Juan MARTINEZ;
Byron Beck; Dan O'Neil; Steve Kenison;
Rupert Kinnard; Scott Stapley; Marc Acito;
Floyd Sklaver; Becky Hanson; Kathy Flynn;
Cristina Caravaca; Sandra Naranjo; Michelle Snyder;
Heidi Thorstad; Diane Groff; Liz Cahill;
Tim Smith; Kent Kullby; Kelly Burke;
Dolores Doyle; Daniel E. H. Bryant;
and Glenna Shepherd,
*Plaintiffs-Appellants,*

*v.*

Theodore R. KULONGOSKI,
Governor of the State of Oregon;
and State of Oregon,
*Defendants-Respondents,*

*and*

DEFENSE OF MARRIAGE COALITION PAC,
an Oregon political action committee;
Timothy Nashif; Michael White;
and Dennis R. Tuuri,
*Intervenors-Respondents.*

Marion County Circuit Court
05C11023; A130818

185 P3d 498

Mark Johnson argued the cause for appellants. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kelly Clark argued the cause for intervenors-respondents. With him on the briefs were Kristian Roggendorf and O'Donnell & Clark LLP.

Marc E. Jolin and Perkins Coie, LLP, and Thomas M. Christ and Cosgrave Vergeer Kester LLP filed the brief *amicus curiae* for American Civil Liberties Union Foundation of Oregon.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs brought this action for declaratory relief against the Governor and the State of Oregon (the state), seeking a declaration that Ballot Measure 36 (2004), a voter-initiated measure, which prohibited recognition of same-sex marriages, did not comply with the provisions of Article XVII, sections 1 and 2, of the Oregon Constitution. On cross-motions for summary judgment, the trial court entered judgment in favor of defendants. Plaintiffs appeal, raising two overarching issues: (1) Did Measure 36 embody a "revision" to the constitution that could not originate from a voter initiative? (2) Alternatively, is Measure 36 invalid because it effected multiple amendments to the Oregon Constitution that are not "closely related"? As did the trial court, we answer both of those questions in the negative. Accordingly, we affirm.[1]

The facts material to our analysis and disposition are undisputed. In March 2004, intervenor-defendant Tuuri and another elector filed Initiative 150 (2004) with the Office of the Secretary of State. That initiative was subsequently certified, and qualified for the ballot of the November 2, 2004, general election, as Ballot Measure 36 (2004). On November 2, 2004, the voters enacted Ballot Measure 36 (2004) as Article XV, section 5a, of the Oregon Constitution. That provision states:

"It is the policy of Oregon, and its political subdivisions, that only a marriage between one man and one woman shall be valid or legally recognized as a marriage."

On January 31, 2005, plaintiffs brought this action, seeking a declaration that Measure 36 was unconstitutional. Specifically, plaintiffs alleged that the measure embodied a voter-initiated *revision* (as opposed to *amendment*) of the constitution in violation of Article XVII, section 2, of the Oregon Constitution, and that the measure violated the "separate vote" requirement of Article XVII, section 1.[2] After various

---

[1] Given our analysis and disposition, we do not address a cross-assignment of error raised by intervenors-defendants.

[2] Plaintiffs also alleged that Measure 36 violated Article IV, section 1(2)(a), of the Oregon Constitution, because it was "merely a statement of policy" and did not

individuals and the Defense of Marriage Coalition PAC intervened as defendants, the parties filed cross-motions for summary judgment.

The trial court issued a comprehensive letter opinion, rejecting plaintiffs' claims and allowing summary judgment for defendants. With respect to whether Measure 36 embodied a "revision" instead of an "amendment" to the Oregon Constitution, the court noted that, although the case law pertaining to the difference between a "revision" and an "amendment" was sparse and inconclusive, this court's decision in *Lowe v. Keisling*, 130 Or App 1, 11-13, 882 P2d 91 (1994), *rev dismissed*, 320 Or 570 (1995), which we address in detail below, did afford some guidance. The trial court further reasoned that, given that the measure challenged in *Lowe* did not embody a revision, Measure 36 similarly did not. With respect to plaintiffs' "separate vote" challenge, the trial court concluded that various substantive changes resulting from the enactment of Measure 36 "are closely related and do not run afoul of the separate-vote requirement."

■ On appeal, the parties largely reiterate their contentions before the trial court.[3] We turn first to plaintiffs' argument that Measure 36 embodies a revision to the Oregon Constitution rather than an amendment. That distinction is critical because, although an "amendment" to the constitution may be initiated by the voters, a "revision of all or part of" the constitution can be considered by the voters only by referendum after approval of at least two-thirds of the members of each house of the legislature. Or Const, Art IV, § 1(2)(b); Or Const, Art XVII, §§ 1, 2(1). Article XVII, section 2(1), provides:

"In addition to the power to amend this Constitution granted by section 1, Article IV, and section 1 of this Article, a revision of all or part of this Constitution may be proposed in either house of the Legislative Assembly and, if the proposed revision is agreed to by at least two-thirds of all the

embody a "law or amendment." The trial court ultimately rejected that argument and, on appeal, plaintiffs acknowledged that that argument is foreclosed by the Oregon Supreme Court's decision to the contrary in *Li v. State of Oregon*, 338 Or 376, 110 P3d 91 (2005).

[3] In addition, the American Civil Liberties Union Foundation of Oregon (ACLU) has submitted an *amicus curiae* brief in support of plaintiffs' challenge.

members of each house, the proposed revision shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, notwithstanding section 1, Article IV of this Constitution, at the next regular state-wide primary election, except when the Legislative Assembly orders a special election for that purpose. A proposed revision may deal with more than one subject and shall be voted upon as one question. The votes for and against the proposed revision shall be canvassed by the Secretary of State in the presence of the Governor and, if it appears to the Governor that the majority of the votes cast in the election on the proposed revision are in favor of the proposed revision, he shall, promptly following the canvass, declare, by his proclamation, that the proposed revision has received a majority of votes and has been adopted by the people as the Constitution of the State of Oregon or as a part of the Constitution of the State of Oregon, as the case may be. The revision shall be in effect as the Constitution or as a part of this Constitution from the date of such proclamation."

Thus, if Measure 36 embodied a revision, it could not have been validly enacted because it was initiated by voters, rather than referred by the legislature.

As the trial court observed, few reported Oregon decisions explore the distinction between an "amendment" to the constitution and a "revision of * * * part of" the constitution. Further, those decisions, for the most part, do not offer detailed analysis. That may be due both to the amorphous quality of the inquiry and to the fact that, however elusive the distinction may be in close cases, the few reported cases have involved circumstances falling clearly on one side of the "line" or the other.

Notwithstanding the relative paucity of Oregon precedent—or, perhaps, because of it—the parties here advance definitional tests derived not only from Oregon decisions but also from the case law of other jurisdictions with constitutional provisions that are arguably analogous to Article XVII, section 2. Plaintiffs and *amicus* ACLU, invoking case law from California and Alaska, argue that, as a general matter, we should assess "both the quantitative and qualitative effects" of a proposed measure, *Raven v. Deukmejian*, 52 Cal 3d 336, 350, 276 Cal Rptr 326, 334, 801 P2d 1077, 1085

(1990), to determine whether the proposed change so "alters the substance and integrity of" the constitution as to effect a revision. *Bess v. Ulmer*, 985 P2d 979, 982 (Alaska 1999).[4] Under such an inquiry, "even a relatively simple enactment may accomplish such far reaching changes in the nature of our basic governmental plan as to amount to a revision * * *." *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization*, 22 Cal 3d 208, 223, 149 Cal Rptr 239, 244, 583 P2d 1281, 1286 (1978).

From the analysis developed in other jurisdictions and other sources, plaintiffs derive and propose the following two-part test of whether a proposed measure embodies a "revision" of the constitution:

"The test plaintiffs propose has two components—a quantitative analysis * * * and a qualitative analysis. If either test is met, the measure is a revision. In the first (quantitative) portion of the evaluation, the court inquires whether the measure has a direct, substantial impact on the text of the constitution, such that its structure is altered by the deletion of or amendment to existing language or the addition of new language. If the answer to that inquiry is 'yes,' the measure is a revision and is subject to the more detailed procedures of Article XVII, section 2.

"In the second (qualitative) portion of the court's evaluation, the inquiry again has two components: First, does the measure derogate from, reallocate, reassign, or create rights in any of the constituent branches of government such that the fundamental framework of government is substantially altered? Second, does the measure substantially derogate from fundamental principles of the Constitution in a way that works a particular, cognizable injustice to a discrete class of citizens? Again, if the answer to either question is 'yes,' the measure is a revision and may be enacted only through the procedures specified in Article XVII, section 2."[5]

---

[4] The California Constitution provides for amendments by initiative and revisions by constitutional convention or legislative referral. Cal Const, Art XVIII, §§ 1 - 3. Under the Alaska Constitution, constitutional amendments can be referred to the voters by the legislature, but constitutional revisions can be referred only by a constitutional convention. Alaska Const, Art XIII, §§ 1, 4.

[5] The reference to "cognizable injustice to a discrete class of citizens" harkens, as both plaintiffs and *amicus* ACLU acknowledge, to the redoubtable footnote 4 in *United States v. Carolene Products Co.*, 304 US 144, 152 n 4, 58 S Ct 778, 82 L Ed 1234 (1938).

Applying that test, plaintiffs assert that Measure 36 embodied a "revision" under the second, "qualitative" inquiry because "[t]he intended and inevitable effect of the measure is to exclude a distinct minority group of citizens from the equal benefits and obligations of Oregon law," in derogation of the "fundamental organizing principle * * *—the idea and purpose of justice" that is "inherent in the very framework of the Constitution."[6]

The state defendants, for their part, while vigorously disputing the particulars of plaintiffs' proposed formulation, agree with plaintiffs that the determination of whether a proposed measure embodies a "revision" of the constitution is not purely quantitative. Rather, also drawing on California and Alaska sources, those defendants propose that, as a qualitative matter, a measure constitutes a revision if it makes "far-reaching changes in the nature of our basic governmental plan." The state defendants assert that that qualitative threshold was not crossed here.

Finally, intervenors-defendants decry any qualitative inquiry. They contend that, under controlling Oregon decisions, the determination of whether a proposed measure constitutes a "revision" is exclusively quantitative, *viz.*, whether there was "significant rewriting of numerous articles of the Oregon Constitution."

As amplified below, we conclude that the distinction between a "revision" and an "amendment" of the constitution for purposes of Article XVII, section 2, can properly involve quantitative and qualitative considerations. However, we respectfully reject plaintiffs' proffered "qualitative" formulation as irreconcilable with our analysis and disposition in *Lowe*, a decision of our full court, to which we adhere. Finally, we neither endorse nor reject the state defendants'

---

[6] *Amicus* ACLU echoes that assertion:

"[A]dding a provision to the constitution that authorizes (or requires) discrimination against a suspect class and the privileges of citizenship without any obligation to demonstrate that such discriminatory treatment is properly justified runs so counter to the way our system of government seeks to protect disfavored minorities from the prejudices of the majority that it must be treated as a revision."

proposed "qualitative" formulation because resolution of that matter is not essential to our disposition in this case. Rather, regardless of the precise contours and content of the "qualitative" component—and consistently with *Lowe*—the constitutional changes wrought by Measure 36 were not so "fundamental" and "far reaching," *Lowe*, 130 Or App at 13, as to effect a "revision."

We begin with the language and history of Article XVII, section 2, and proceed to the case law construing and applying that provision. *See generally Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 57, 11 P3d 228 (2000). Reference to the commonly understood meaning of "revision" is unenlightening—and, to some degree, disconcertingly circular. "Revision" is defined as "that made by revising," and "revise" is, in turn, defined, as pertinent, as "to correct or *amend* on reexamination." *Webster's New Int'l Dictionary* 1826, 1825 (2d ed 1961) (emphasis added).[7]

Article XVII, section 2, was enacted, following a legislative referral to the voters, in 1960. The "explanation" of the measure in the Voters' Pamphlet noted that there were then three methods by which the constitution "may be amended"—*viz.*, by the electorate either upon a measure proposed by initiative or a measure referred by the legislature (either of which "require[d] a separate vote on each proposed change to the Constitution") or by way of a constitutional convention. Official Voters' Pamphlet, General Election, Nov 8, 1960, 16. The "explanation" further stated that the proposed Article XVII, section 2, would provide a "fourth means of amendment":

> "The fourth means of amendment, which would be provided by this amendment, would allow the legislature upon a two-thirds vote of its membership to refer to the voters for approval a revision of the entire Constitution or part thereof, which would be voted upon in its entirety by the people for approval or rejection. Each change in the overall revision would not be voted on separately. The proposed

---

[7] "Amend" is defined, as pertinent, as "to alter (as a bill or resolution) formally by some addition, taking away, or modification[.]" *Webster's* at 69.

revision would be referred to the people for approval or rejection at the next primary election following the legislative session proposing the revision or at a special election called for that purpose.

"At the present time the Constitution may be revised, in its entirety or in part only, by a constitutional convention approved for that purpose by the people on a referendum vote at a regular general election. The present methods of constitutional amendment in this state, except for a constitutional convention, do not allow any means of *overall, coordinated and simultaneous revision of the Constitution of the state*.

"The proposed amendment would allow the legislative assembly to propose revision of the Constitution in whole or in part to be submitted to the voters for approval only upon a two-thirds vote of all members of each of the houses of the legislature. A bare majority of the legislature can now, and could after this amendment, as now, refer separate, particular amendments to the Constitution to the voters for approval or rejection."

Voters' Pamphlet at 16-17 (emphasis added).

The first case applying the newly enacted Article XVII, section 2, was *Holmes v. Appling*, 237 Or 546, 392 P2d 636 (1964). There, the plaintiffs unsuccessfully challenged the defendant Secretary of State's refusal to provide a ballot title for a voter-initiated measure, which the Supreme Court described as follows:

"[T]he measure sponsored by the plaintiffs is * * * a thorough overhauling of the present constitution and a complete constitution, commencing with the customary 'The people of Oregon ordain this Constitution,' and including an article providing for the transition period between the date of its adoption and the day it was to go into effect. It is 56 typewritten pages in length. It contains many and *important changes in substance*, many others in language, removing ambiguities and correcting errors, and still others in the arrangement of its various provisions.

"To call it an amendment is a misnomer.

"Whether it be a revision or a new constitution, it is not such a measure as can be submitted to the people through the initiative."

*Id.* at 552 (emphasis added). In so holding, the court noted that the measure indicated that it would be adopted "in lieu of" and would have "repealed" the existing constitution. *Id.* at 552-53. Although the court left open the question whether the measure was, in fact, a "revision" for purposes of Article XVII, section 2, or an entirely new constitution, it readily concluded that it was not an "amendment" that could be enacted by initiative. *Id.* at 554-55.

Although the Supreme Court has not plumbed the "revision" versus "amendment" distinction since *Holmes*,[8] we have done so on two occasions. First, in *Barnes v. Paulus*, 36 Or App 327, 588 P2d 1120, *rev den*, 284 Or 81 (1978), we considered whether an initiated measure to add a constitutional limitation on property taxes was a "revision" rather than an "amendment"—and thus could not be enacted through the initiative process. We rejected that argument, stating that a "comparison of the measure in *Holmes* with that of the case at bar demonstrates their dissimilarity." *Id.* at 335. In particular, we noted that, while *Holmes* involved a 56-page document, the property tax limitation consisted of "approximately 16 lines of type[.]" *Id.* We also disagreed with the plaintiffs' suggestion that the distinction between a revision and an amendment was "the number of existing constitutional provisions that would be affected if the measure were to become law." *Id.* at 336. We concluded: "It is impossible to draw a precise line between an amendment and a revision. Suffice it to say that the initiative measure proposed here is more in the nature of an amendment than a revision." *Id.*

Second, and most pertinent, is *Lowe.* There, the plaintiffs sought to enjoin the Secretary of State from placing an initiated measure on the ballot that would have added a new section to the constitution making numerous provisions to deny "minority status" based on sexual orientation, to restrict education and availability of books "which address homosexuality," and to prohibit the state and local

---

[8] In *Hartung v. Bradbury*, 332 Or 570, 33 P3d 972 (2001), the court summarily rejected an argument that a 1986 change to Article IV, section 6, of the Oregon Constitution was a "revision" rather than an "amendment," without any elucidation of that distinction.

governments from granting "marital status or spousal benefits on the basis of homosexuality." 130 Or App at 5 n 3. The plaintiffs argued, in part, that the measure could not be placed on the ballot because it embodied a "revision" of the constitution that had not been referred by the legislature as prescribed in Article XVII, section 2. The trial court agreed.

In an en banc opinion, we reversed. We described the plaintiffs' argument that the proposed measure embodied a "revision":

"[The plaintiffs] assert that the distinction between amendment and revision is determined by reviewing the scope and subject matter of the proposed enactment, and that revisions are not limited to 'a formal overhauling of the constitution.' They argue that this ballot measure proposes far-reaching changes outside the lines of the original instrument, including profound impacts on existing fundamental rights and radical restructuring of the government's relationship with a defined group of citizens. Plaintiffs assert that * * * the proposed ballot measure 'will refashion the most basic principles of Oregon constitutional law[.]' "

*Lowe*, 130 Or App at 11. We rejected that argument, concluding:

"As in *Barnes v. Paulus*, we need not determine in this case precisely where the line is between amendment and revision. The proposed measure in this case would not result in the kind of *fundamental change in the constitution* that would constitute a revision. It is much more like the one we held to be an amendment in *Barnes v. Paulus*: It defines and limits the treatment that state and local governments may accord to homosexual citizens and to the subject of homosexuality in the schools, libraries and other government forums. Although the measure may affect a number of constitutional provisions, and may in fact have substantive constitutional defects, we do not see that change as any more of a revision than the property tax limitation measure we held in *Barnes* was a proposed amendment that could be made by initiative. As in *Barnes*, this

proposed change *is not so far reaching* as to constitute a revision."[9]

*Id.* at 13 (emphases added).

From *Holmes* and *Lowe*, it is apparent that, although quantitative considerations may be material, the distinction between a constitutional revision and an amendment does not depend exclusively—or, even, most importantly—on some content-neutral arithmetic function of counting lines of text or numbers of potentially derivatively affected provisions. In *Holmes*, the Supreme Court referred not only to the quantity ("many") of changes that would result from the proposed measure but also the quality ("*important* changes in *substance*") of those changes. 237 Or at 552 (emphases added). Similarly, in *Lowe*, in concluding that the proposed measure would not effect a revision, we emphasized that the measure would not result in a "*fundamental* change in the constitution" and that it was "not so *far reaching as to constitute a revision.*" 130 Or App at 13 (emphases added). To be sure, terms such as "important," "substance," "fundamental," and "far-reaching" are amorphous, lacking the concrete comfort of "quantitative" counting. Nevertheless, those terms, employed by the Supreme Court and our court, are innately, undeniably, "qualitative."

The intrinsic imprecision of the "qualitative" component does not, however, mean that that component is infinitely elastic. There are—as there must be—limits comporting with the function of Article XVII, section 2, in the constitutional scheme and with precedents construing and applying that provision. Whatever the ultimate content of the "qualitative" component—and we need not, and do not, determine that here—it must be consistent with the analysis and disposition in *Holmes* and with our own precedent.

For that reason, we necessarily reject plaintiffs' proposed "qualitative" formulation. *See* 220 Or App at 148 (setting out that formulation). That formulation is irreconcilable

---

[9] Although three members of the court took issue with one aspect of the majority opinion's analysis, *see Lowe*, 130 Or App at 20 (De Muniz, J., concurring), all judges joined in the determination that the proposed measure was not a "revision" for purposes of Article XVII, section 2.

with our disposition in *Lowe*. The proposed measure in *Lowe* was far more sweeping in its application to a "discrete class of citizens" (gay and lesbian Oregonians) than is Measure 36. Specifically, although both prohibited marital status for same-sex couples, the measure in *Lowe* also proposed to, *inter alia*, preclude any governmental recognition of domestic partnerships and any allowance of spousal benefits. Bluntly, if, as we held in *Lowe*, the proposed measure there was not a revision, Measure 36 cannot be a revision. Conversely, if, as plaintiffs urge, Measure 36 is a "revision" under their qualitative formulation, the proposed measure in *Lowe* must, contrary to our holding, have also been a revision.

In sum, to reach the result that plaintiffs urge in this case, we would have to overrule *Lowe*.[10] Giving due and "decent respect [to] the principle of *stare decisis*," *State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005), we decline to do so.

In *Ciancanelli*, the Supreme Court explained that a party seeking to overturn constitutional precedent must first show that the precedent "was not formulated either by means of the appropriate paradigm or by some suitable substitute." 339 Or at 291. The party must then persuade the court "that application of the appropriate paradigm establishes that the challenged constitutional rule is incorrect." *Id.* Finally, the party must persuade the court that "when the passage of time and the precedential use of the challenged rule is factored in, overturning the rule will not unduly cloud or complicate the law." *Id.*

In this case, plaintiffs have offered no persuasive argument that our prior (and existing) formulation for identifying a "revision" is incorrect. That is, they have not demonstrated that our "paradigm," however imprecise, was erroneous—and, specifically, they have not offered new information as to the meaning of "revision" in Article XVII, section 2, that calls into question our analysis and disposition in

---

[10] Plaintiffs contend, alternatively, that *Lowe* can be materially distinguished from this case because the measure there contained "savings clauses" that would have limited its effect on other constitutional provisions. Our analysis in *Lowe*, however, was not based on the presence of "savings clauses." We thus reject plaintiffs' proposed distinction.

*Lowe*. Indeed, plaintiffs' arguments here, while more refined, are strikingly similar to the plaintiffs' contentions in *Lowe* referring to "profound impacts on existing fundamental rights and radical restructuring of the government's relationship with a defined group of citizens." *Lowe*, 130 Or App at 11. Accordingly, we adhere to *Lowe* and, given that adherence, conclude that Measure 36 was not a constitutional revision.

■ We proceed to plaintiffs' alternative challenge: Did Measure 36 violate the "separate vote" requirements of Article XVII, section 1? Plaintiffs argue that Measure 36 made numerous amendments to the Oregon Constitution that are not closely related, and thus each change should have been submitted for separate vote to the voters.[11] Article XVII, section 1, provides, in pertinent part:

> "When two or more amendments shall be submitted in the manner aforesaid to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately."

■ In *Armatta v. Kitzhaber*, 327 Or 250, 277, 959 P2d 49 (1998), the court set forth a test for determining whether a proposed amendment to the constitution violates Article XVII, section 1:

> "[T]he proper inquiry is to determine whether, if adopted, the proposal would make two or more changes to the constitution that are substantive and that are not closely related. If the proposal would effect two or more changes that are substantive and not closely related, the proposal violates the separate-vote requirement of Article XVII, section 1, because it would prevent the voters from expressing their opinions as to each proposed change separately. In some instances, it will be clear from the text of the proposed initiative whether it runs afoul of Article XVII, section 1. In other instances, it will be necessary to examine the implications of the proposal before determining whether it contains two or more amendments."

---

[11] Plaintiffs pose seriatim assignments of error, each corresponding to a provision of the constitution that plaintiffs assert was changed by Measure 36. Because each of those arguments concerns whether Measure 36 was enacted in violation of Article XVII, section 1, we address those contentions collectively.

At issue in *Armatta* was a "crime victim's rights" measure that provided crime victims numerous rights concerning participation in criminal proceedings and plea negotiations, and also contained provisions concerning the admissibility of evidence in criminal trials, jury composition, jury unanimity, defendants' eligibility for sentence reduction programs, and joinder of charges against defendants, among other things. *Id.* at 254. The Supreme Court observed that the measure contained multiple implicit substantive changes to the constitution: It altered jury trial rights as established by Article I, section 11, juror qualifications as established by Article VII (Amended), section 5, and pretrial release provisions established by Article I, section 14. Further, by requiring admission of evidence to be governed only by federal constitutional standards, the measure limited the protections offered by criminal defendants under Article I, sections 9 and 12. *Id.* at 279-81. The court concluded that those amounted to multiple, substantive amendments to the constitution.

The Supreme Court then turned to the question whether the amendments were "closely related." In concluding that they were not, the court stated:

"Many of the constitutional provisions affected by Measure 40 are related in the sense that they pertain to constitutional rights that might be implicated during a criminal investigation or prosecution. However, not all—such as the requirement that the jury pool in criminal cases be drawn from registered voters—share even that relationship. Further, even those provisions that are related in the sense described are not related closely enough to satisfy the separate-vote requirement of Article XVII, section 1. For example, the right of all people to be free from unreasonable searches and seizures under Article I, section 9, has virtually nothing to do with the right of the criminally accused to have a unanimous verdict rendered in a murder case under Article I, section 11. The two provisions involve separate constitutional rights, granted to different groups of persons. Similarly, the right of the criminally accused to bail by sufficient sureties under Article I, section 14, bears no relation to legislation concerning the qualification of jurors in criminal cases under Article VII (Amended), section 5(1)(a). Those examples alone are sufficient to demonstrate that Measure 40 contains 'two or more amendments' to the

Oregon Constitution. Accordingly, we conclude that the measure was not adopted in compliance with Article XVII, section 1."

*Id.* at 283-84.

Thus, under *Armatta*, we make three conjunctive inquiries: (1) Does the measure make two or more changes to the constitution? (2) If so, are they substantive? (3) If so, are they closely related?

We turn to the first of those questions. Plaintiffs assert that Measure 36 amends each of the following constitutional provisions: Article I, section 1; Article I, section 10; Article VI, section 10; and Article XI, section 2. Intervenors-defendants argue in response that Measure 36 did not amend any of those provisions, and moreover did not (as the trial court found) amend Article I, section 20, of the Oregon Constitution either. As explained below, we conclude that the trial court correctly rejected plaintiffs' arguments concerning amendments to Article I, sections 1 and 10, Article VI, section 10, and Article XI, section 2. Moreover, we agree with the trial court that any substantive changes to the constitution effected by Measure 36 are closely related.

As an initial matter, we note that plaintiffs, although they recognize that the purpose of Article XVII, section 1, is to allow voters to vote separately on multiple amendments to the constitution, do not actually suggest any practical way in which Measure 36 could have been broken into separate amendments. That is, plaintiffs have no suggestion about *how* the sentence, "It is the policy of Oregon, and its political subdivisions, that only a marriage between one man and one woman shall be valid or legally recognized as a marriage," should have been parsed into two separate provisions, much less into five separate provisions. Rather, plaintiffs contend that the trial court failed to recognize the effect that Measure 36 would have on the manner in which several other constitutional provisions would be construed and applied.

First, plaintiffs assert that Measure 36 amended Article I, section 1, of the Oregon Constitution, which provides, in part, that "[w]e declare that all men, when they form

a social compact are equal in right[.]" However, as plaintiffs acknowledge, Oregon case law supports the position that that provision does not create any individual fundamental or inalienable natural rights. *See generally Ciancanelli,* 339 Or at 310; *Does 1-7 v. State of Oregon,* 164 Or App 543, 561, 993 P2d 822 (1999), *rev den,* 330 Or 138 (2000). We reject plaintiff's arguments concerning Article I, section 1, without further discussion.

■      Plaintiffs next argue that Measure 36 amended the Remedy Clause of Article I, section 10, of the Oregon Constitution, that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." To determine whether there has been a violation of the remedy clause, the "first step is to determine whether the injury that plaintiff has alleged is one for which the Remedy Clause guarantees a remedy." *Jensen v. Whitlow,* 334 Or 412, 418, 51 P3d 599 (2002). If so, the court then examines whether, in abolishing that common-law right, the legislature provided an "adequate substitute remedy." *Smothers v. Gresham Transfer, Inc.,* 332 Or 83, 124, 23 P3d 333 (2001). Plaintiffs assert that marriage is a common-law right that was recognized at the time the Oregon Constitution was enacted.

       The fundamental flaw in plaintiffs' argument is that any common-law right to marriage at that point in time was, in fact, limited to marriages between men and women. As defendants note, and plaintiffs do not dispute, same-sex sexual relationships were not recognized at common law—and, indeed, some same-sex sexual conduct appears to have been criminalized at the time the Oregon Constitution was enacted. *See, e.g., General Laws of Oregon,* ch 49, § 639 (Deady 1845-1864). In fact, the law contained numerous prohibitions on who could marry. *See id.* at ch 31, §§ 2, 3 (prohibiting marriages between certain kin, and between certain "white" and "negro" persons). In short, there was no antecedent omnibus common-law right to marry. Consequently, plaintiffs have not established that the enactment of Measure 36 deprives anyone of a remedy protected by Article I, section 10—and, by extension, Measure 36 does not amend Article I, section 10.

Plaintiffs next contend that Measure 36 amended the "home rule" provisions of Article VI, section 10, and Article XI, section 2, of the Oregon Constitution. Article VI, section 10, provides for the legislature to authorize counties to adopt, amend, or revise county charters. Article XI, section 2, further provides that the "legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon," with certain limitations. Those provisions are commonly referred to as the "home rule" provisions of the constitution. Plaintiffs argue that Measure 36's limitation on who may marry is a limitation on the authority of local governments and, thus, amends the "home rule" provisions. That argument is foreclosed by the Supreme Court's analysis in *Li v. State of Oregon*, 338 Or 376, 110 P3d 91 (2005).

In *Li*, the plaintiffs included same-sex couples who had been issued marriage licenses by Multnomah County, which the State Registrar refused to register on the ground that same-sex marriages did not comport with provisions of the Oregon Revised Statutes. 338 Or at 382. The plaintiffs sought a declaration that the statutes prohibiting same-sex marriages violated Article I, section 20, of the Oregon Constitution.

The Supreme Court did not reach that specific issue, concluding that the enactment of Measure 36 "resolves any prospective claims that plaintiffs may have had under Article I, section 20, to obtain marriage licenses." *Id.* at 390. In so holding, the court addressed the question whether the Multnomah County marriages were valid at the time they were entered into. Reviewing the history of marriage law in Oregon, the court concluded that marriage had always been controlled at the state rather than the local level:

"[T]he state and, more specifically, the legislature, is the locus of power over marriage-related matters in Oregon. If that power is broad enough to preempt other states' contrary marriage policies, it inescapably is broad enough to preempt similar policies generated by a political subdivision of this state, such as the county. It is true that nothing in ORS chapter 106 expressly reserves exclusive authority over marriage to the state; however, we cannot ignore this

court's jurisprudence that expressly recognizes that exclusive authority, absent some clear legislative directive to the contrary."

*Id.* at 392. The court ultimately concluded that, regardless of whether the county had correctly determined that the state's marriage laws violated Article I, section 20, the county had no authority to fashion a remedy for the supposed violation. *Id.* at 397. Given the court's analysis in *Li*, we conclude that Measure 36 did not amend the home rule provisions of the Oregon Constitution. *See generally LaGrande/Astoria v. PERB*, 284 Or 173, 586 P2d 765 (1978).

We thus resolve most of plaintiffs' arguments concerning Article XVII, section 1, based on the first inquiry under the *Armatta* test. The only remaining issue concerns whether or how Measure 36 affects Article I, section 20, of the Oregon Constitution. Article I, section 20, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." As noted by the Supreme Court in *Li*, the passage of Measure 36 extinguished any rights that same-sex couples may have had to marriage under Article I, section 20. *Li*, 338 Or at 390 ("As the later-enacted (and more specific) constitutional provision, Measure 36 resolves any prospective claims that plaintiffs may have had under Article I, section 20, to obtain marriage licenses."). In light of that holding in *Li*, we will assume, without deciding, for the purpose of the present case that Measure 36 did amend Article I, section 20.

We thus turn to the second question under *Armatta*. Are the amendments substantive? As to whether Measure 36 itself is substantive, the court in *Li* has answered that question in the affirmative. 338 Or at 390. Moreover, in light of the court's disposition of the Article I, section 20, question in *Li*, we again assume, without deciding, that the amendment to that provision is substantive as well.

The final question under *Armatta* is whether those purported substantive changes to the constitution are "closely related" for purposes of Article XVII, section 1. *Meyer v. Bradbury*, 341 Or 288, 292, 142 P3d 1031 (2006), frames and informs our inquiry.

In *Meyer*, the Supreme Court considered the manner in which the constitution would have been changed by a proposed ballot measure that provided:

> " 'Notwithstanding any other provision of this Constitution, the people through the initiative process, or the Legislative Assembly by a three-fourths vote of both Houses, may enact and amend laws to prohibit or limit contributions and expenditures, of any type or description, to influence the outcome of any election.' "

*Id.* at 292 (quoting Initiative Petition 8 (2006)). The court determined that that provision would effect changes to Article I, section 8, which protects free expression, and Article IV, section 25, which concerns legislative majorities. *Id.* at 297. The court concluded that those changes satisfied the "closely related" requirement:

> "In some cases, this court has needed to focus on only the different parts of the constitution being amended to conclude that the changes at issue were clearly unrelated, because they involved different changes to different fundamental rights affecting different groups of people. *See, e.g., League of Oregon Cities[ v. State of Oregon]*, 334 Or [645,] 674-75, [56 P3d 892 (2002)] (amendments contained in single constitutional measure expanded Article I, section 18, property rights for some property owners, while simultaneously limiting Article I, section 8, free expression rights for other property owners). In other cases, this court focused on the different provisions contained in the amendatory measure itself and concluded that the changes that they would have made to the constitution were themselves so divergent as to render them 'not closely related.' *See, e.g., Swett [v. Bradbury]*, 333 Or 597, [43 P3d 1094 (2002)] (invalidating measure that encompassed adding constitutional campaign contribution disclosure requirement, as well as constitutional requirement that signature gatherers for initiative petitions be registered to vote in Oregon).
>
> "In our view, however, the case before us now is different from either of those examples. First, [the measure] does not change different constitutional provisions that confer different fundamental rights on different groups of persons. *See Armatta*, 327 Or at 283-84 (changes to constitutional provisions involving separate constitutional rights granted to different persons not closely related for separate-vote

requirement); *see also Lehman [v. Bradbury]*, 333 Or [231,] 246 n 9[, 37 P3d 989 (2002)] (when separate constitutional provisions conferring separate rights on different groups are affected by proposed amendment, it is 'strong indication' that provisions are not closely related for separate-vote requirement).

"Second, [the measure] is not a complicated measure. If adopted, [the measure] will do essentially two things: (1) create a general authority for both the people and the legislature to enact laws regulating campaign finances; but (2) condition the legislature's ability in that regard through a supermajority procedural requirement. The supermajority requirement that [the measure] would place on the legislature both carries out and limits the general authority to enact contribution and expenditure laws that the measure would create. In other words, the supermajority requirement is a procedural condition on which the right to exercise substantive authority is predicated. Viewed in that manner, the constitutional changes proposed by [the measure] are 'closely related' and therefore do not offend the Article XVII, section 1, separate-vote requirement."

*Meyer*, 341 Or at 300-01.

*Meyer* is highly instructive here. First, as in *Meyer*, the amendment at issue in this case "does not change different constitutional provisions that confer different fundamental rights on different groups of persons." *Id.* at 301. That is, Measure 36 contains a restriction on what marriages the state will recognize, and Article I, section 20, is functionally amended to reflect *exactly the same* restriction. Further, like the proposed amendment in *Meyer*, the amendment here simply "is not a complicated measure." *Id.* In that regard, we concur in the state's characterization of the measure:

"Here, Measure 36 does even less than the measure at issue in *Meyer*. It does only one thing: restrict marriage in Oregon to opposite-sex couples. Any incidental alterations made to the existing constitution by the enactment of Measure 36 are simply those necessary to effectuate that single, simple objective: the elimination of constitutional protections for, and authorizations of, same-sex marriage."

We thus conclude that the changes that Measure 36 made to the Oregon Constitution are "closely related."

Affirmed.